UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAYBURN "RAY" McCLURE,<br><br>                    Plaintiff,<br><br>v.<br><br>LINCOLN COUNTY AND LINCOLN COUNTY BOARD OF COMMISSIONERS, CRESLEY McConnell, and ROY HUBERT,<br><br>                    Defendants. | Case No. 1:15-cv-00324-EJL-CWD<br><br>**REPORT AND RECOMMENDATION RE: MOTION TO PARTIALLY DISMISS and MOTION FOR LEAVE TO AMEND TO INCLUDE PUNITIVE DAMAGES (DKT. 10, 27); AND**<br><br>**ORDER RE: MOTION FOR RECONSIDERATION (DKT. 10)** |

## INTRODUCTION

Pending before the Court are three motions. First, Defendants filed a motion for reconsideration of the Idaho state court's denial of Defendants' request to issue a protective order and to strike purportedly attorney-client privileged information from an affidavit. (Dkt. 10.) Second, Defendants filed a partial motion to dismiss five of McClure's claims, and also a motion to dismiss Hubert and McConnell as defendants named in their official capacities. (Dkt. 10.) Third, Plaintiff filed a motion to amend his complaint to include claims for punitive damages. (Dkt. 27.)

**REPORT, RECOMMENDATION, AND ORDER - 1**

The Court heard oral argument from the parties on all three motions on February 3, 2016. (Dkt. 33.) After review of the record, consideration of the parties' arguments and relevant legal authorities, and otherwise being fully advised, the Court issues the following report and recommendation on the motion to partially dismiss and motion for leave to amend, and order on the motion for reconsideration.

## BACKGROUND

### 1. McClure's Previous Lawsuit (*McClure I*)[1]

This is the second lawsuit between Plaintiff Rayburn McClure and Defendant Lincoln County. It is necessary to provide some background of the first action (*McClure I*) to gain a clearer understanding of this second action presently before the Court.

In September of 2008, Lincoln County awarded McClure a one year janitorial contract. *McClure I 2nd Am. Compl.*, ¶ VII. (Dkt. 30-3 at 3.) In October of 2009, McClure rebid the janitorial contract in competition with Suzanne McConnell and McConnell Construction. *Id.* at ¶ VIII. At that time, Suzanne McConnell held the position of Lincoln County Planning and Zoning Administrator. *Id.* at ¶ IX.  Suzanne McConnell lost the bid; Lincoln County awarded McClure an additional two year janitorial contract for 2011 and 2012. *Id.*

In January of 2011, Suzanne McConnell was elected Lincoln County Clerk. *Id.* at ¶ XII. McClure was appointed to fill the position of Planning and Zoning Administrator.

---

[1] These facts are taken from the allegations in McClure's Second Amended Complaint filed in *McClure I*, provided by Defendants as an exhibit with their response in opposition to McClure's motion for leave to amend to include punitive damages. (Dkt. 30-3); *see McClure et al v. McConnell et al,* Case No. CV-12-157, filed September 13, 2011. The Court does not accept the facts in the *McClure I* Second Amended Complaint as true and does not consider them in the following decision. These facts are included simply to provide background to the present action.

**REPORT, RECOMMENDATION, AND ORDER - 2**

*Id.* at ¶ XIV. Lincoln County awarded McClure an additional contract for 2013. *Id.* at ¶ XLIII. McClure alleged in *McClure I* that Suzanne McConnell continued in her efforts to have McClure removed from the janitorial contract by damaging his business reputation after losing the bid from October of 2009 through May of 2012. *Id.* at ¶ XXXV.

In July of 2012, McClure filed suit against Suzanne McConnell in both her individual capacity and her official capacity as county clerk, Lincoln County, and the Lincoln County Board Commissioners, alleging defamation and a host of other claims in state court in the Fifth Judicial District of Idaho. *Pl.'s Resp. to Def.'s Mot. to Dismiss.*, § A. (Dkt. 2-3 at 2.) In January of 2014, *McClure I* settled and the case was dismissed. *2nd. Am. Compl.*, ¶ 9. (Dkt. 6-1 at 3.)

In this lawsuit, McClure alleges the issues stemming from *McClure I* caused concern throughout the local media. *Id.* at ¶ 10. McClure alleges there were media reports and general questions pertaining to Suzanne McConnell's actions and her responses to his claims in *McClure I. Id.* As a result, on April 15, 2014, McClure spoke to the media about the details of *McClure I. Id.*; *see also Pl.'s Motion for Leave to Amend to Include Punitive Damages*, Ex. 4. (Dkt. 27-4 at. 1.)

## 2.  Facts giving rise to the current lawsuit[2]

On April 28, 2014, McClure was terminated by the Lincoln County Board of Commissioners from his position as the Lincoln County Planning and Zoning Administrator. *2nd. Am. Compl.*, ¶ 15. (Dkt. 6-1 at 4.)  McClure alleges the reasons for his termination stem wholly from the Board's animosity toward McClure, which arose in part due to McClure's media interviews regarding *McClure I. Id.* at ¶ 11.

The Board consists of three elected Commissioners. At all times relevant to the allegations in the action, those members included: Cresley McConnell (Suzanne McConnell's husband), Roy Hubert, and Chairwoman, Marsha Hiatt. Hiatt was McClure's designated supervisor. *Id.* at ¶¶ 6-7. On April 24, 2014, the Board met in an executive session to discuss McClure and his employment with the County.  *Id.* at ¶ 11. Ultimately, the Board decided it would formally discipline McClure for granting interviews to the media with regard to *McClure I. Id.* The Board opted not to terminate McClure's employment because he had received no prior verbal or written disciplinary actions. *Id.* By this point, Hiatt and Lincoln County Prosecutor Scott Paul had formally recused themselves from matters relating to McClure's employment.

On April 28, 2014, Hubert and McConnell invited McClure to attend an executive session of the Board of Commissions, where they provided McClure with a written notice of termination of his employment. *2nd. Am. Compl.*, ¶ 15. (Dkt. 6-1 at 4.) During the

---

[2] For the purposes of Defendants' motion to dismiss, this background section accepts as true the allegations in McClure's Second Amended Complaint and the uncontroverted allegations in the affidavits filed with the instant motion. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The Court considers any disputed material facts in the light most favorable to McClure.

meeting, McClure requested three times for his attorney to be present; his requests were denied. *Id.* at ¶ 15. Because the decision to terminate McClure's employment was different than the agreement the Board had reached during the executive session on April 24, 2014 (to discipline McClure), McClure alleges, that at some point between the two meetings, Hubert and McConnell had to have met in secret to discuss McClure's termination. *Id.* at ¶ 16. If this was the case, no notice was given with regard to this "secret" executive session. *Id.*

McClure alleges McConnell and Hubert had irreconcilable conflicts of interests and should have recused themselves from matters related to his employment. *2nd. Am. Compl.*, ¶ 18. (Dkt. 6-1 at 4.)  McClure alleges his termination provided McConnell with a direct benefit because the Board later appointed Suzanne McConnell to replace McClure as Planning and Zoning Administrator. *Id.* at ¶ 20.  McClure further alleges Hubert had pending actions before McClure as the Planning and Zoning Administrator and that terminating McClure's employment facilitated a positive decision on Hubert's pending actions, which McClure had unfavorably viewed. *Id.* at ¶ 22, 23.

Pursuant to the Lincoln County Personnel Manual, the procedure to dispute termination of employment is to provide the Board with a written grievance within three days of the termination. *Id.* at ¶ 24. Although he believed two-thirds of the Board were biased against him (McConnell and Hubert), McClure filed a grievance with the Board. *Id.* The Board determined McClure's grievance was untimely and upheld the termination decision.

**REPORT, RECOMMENDATION, AND ORDER - 5**

## PROCEDURAL HISTORY

This case has a lengthy procedural history before reaching this Court. On May 15, 2014, McClure filed his second lawsuit in less than two years against Lincoln County and the Lincoln County Board of Commissioners in state court in the Fifth Judicial District of Idaho. *See Complaint*. (Dkt. 1-2.) The original complaint alleged three violations of the Idaho Open Meeting Law. *Id.* On October 27, 2014, McClure amended his complaint to add Cresley McConnell and Roy Hubert as named party defendants and to allege negligence claims against them and Lincoln County. *See Am. Compl.* (Dkt. 1-4.)

On November 7, 2014, Defendants moved for partial dismissal of McClure's amended complaint. *See Def.'s Partial Dismissal Mot.* (Dkts. 1-10, 1-11.)  Specifically, Defendants sought to dismiss all claims with the exception of the Idaho Open Meeting Law claims. *Id.* Defendants sought also to dismiss Hubert and McConnell as parties named in their official capacities and the Board as a named party defendant. *Id.*  In his opposition to the motion, McClure filed the Affidavit of Marsha Hiatt—McClure's former supervisor and former Lincoln County Commissioner. (Dkt. 2-4) (hereinafter "Hiatt Affidavit.") Defendants objected to the state court's consideration of the testimony in the Hiatt Affidavit on relevancy and foundational grounds. *Defs' Briefing re: Matters Outside the Complaint.* (Dkt. 2-9 at 3.)

On account of the Hiatt Affidavit and other materials submitted in connection with the partial motion to dismiss, the state court converted the motion to dismiss into a motion for summary judgment, in part.  On February 25, 2015, the state court issued an order granting in part, and denying in part, Defendants' motion for partial dismissal. *See*

**REPORT, RECOMMENDATION, AND ORDER - 6**

*Order re: Mot. to Dismiss.* (Dkt. 2-15.)  Specifically, the court dismissed the Board of
Commissioners as a named party defendant, and dismissed the wrongful termination
claim asserted against Lincoln County,[3] finding the state court lacked subject matter
jurisdiction because McClure failed to seek judicial review of the Board's termination
decision pursuant to I.C. § 31-1605 and the Idaho Administrative Procedures Act. *Id.* The
state court denied the motion to dismiss Defendants McConnell and Hubert as named
party defendants.[4] *Id.* It is unclear to what extent the state court considered the testimony
in the Hiatt Affidavit when deciding the motion to dismiss.

   Nearly three months after the state court rendered its decision on the motion to
dismiss, however, Defendants attempted to challenge the Hiatt Affidavit on an alternative
ground. On May 29, 2015, they filed a Motion for Protective Order asking the court to
strike paragraphs in the Hiatt Affidavit on the ground the paragraphs contained
information protected from disclosure by the attorney-client privilege. *See Def.'s Mot.
For Protective Order.* (Dkt. 3-7.) Defendants explained that they did not raise the
attorney-client privilege objection as part of their previous objections, because it was not
readily apparent to them until shortly after the hearing on the motion for partial dismissal

---

[3] The Amended Complaint did not specifically articulate a claim for wrongful termination; instead, it
alleged violations of the Open Meeting Law and negligence against all Defendants. (Dkt. 1-4.) The Partial
Motion to Dismiss sought to dismiss the negligence claims for lack of subject matter jurisdiction. (Dkt. 1-
10.) And, during the hearing before the state court, defendants argued the court lacked subject matter
jurisdiction due to McClure's failure to timely seek judicial review. The first time the state court
recognized a "wrongful termination" claim in the record was when the state court issued its decision to
dismiss the claim. The record is not clear why the state court referred to McClure's negligence claim, one
that sounds in tort, as a wrongful termination claim, one that sounds in contract. It also is unclear why
Defendants did not seek dismissal again of the negligence cause of action that remained in the second
amended complaint (as discussed *infra*).
[4] The state court found there were questions of fact about "what Commissioner McConnell and Hubert
did and why they did it; whether there were, in fact, conflicts of interest; and whether the termination was
retaliatory or otherwise not in compliance with the law." *Order*, 7. (Dkt. 2-15.)

**REPORT, RECOMMENDATION, AND ORDER - 7**

that the Affidavit contained privileged communications. *Id.* The purportedly privileged communications occurred during an executive session of the Lincoln County Board of Commissioners.[5] *Id.*

The state court conducted oral argument on the Defendants' motion for protective order and offered the following explanation when denying the motion to strike the certain paragraphs from the Hiatt Affidavit:

> As I pondered this, I think the main objection raised in this case is that you waived the objection… when you get down to the bottom line. In the trial context, if that had occurred in open court, and the objections were relevance and foundation, and no mention of the word privilege, and I had admitted that evidence in a trial, I think a party is hard pressed to then come back and say, whoops, I made a mistake. That may be a fact. I think it probably is a fact. But why should that justify a -- what would otherwise be a clear failure to object on the record?
>
> ***
>
> I'm going to deny [the motion to strike] … and I do it specifically on the basis that the objection was waived.
>
> ***
>
> I understand that the county is now clearly objecting to any confidential information that occurred in executive session, and I make this point because to the extent that this issue is going to continue to come up, and I think it is, I'm not of the view that just because you waived a privilege about one statement that that is necessarily a waiver of every statement that might be made. For example, if Ms. [Hiatt] said, we discussed item A, that was not objected to, and that's privileged information, then fine, it comes in. But if in the course of this case there's an attempt to say, well, we also discussed items B, C, D, E, F, and G, I now understand that the county has objected to that, and I -- once the objection is made, that objection stands, as far as I'm concerned.

---

[5] Defendants made this argument to the state court and repeat it here, despite the fact that counsel present during the executive session is the same counsel defending Defendants in this lawsuit.

**REPORT, RECOMMENDATION, AND ORDER - 8**

*Transcript of July 27, 2015 Oral Argument*. (Dkt. 16 at 5; Dkt. 18 at 8; and Dkt. 19 at 1.)

On July 10, 2015, McClure filed a motion for leave to amend his complaint and the state court granted the motion the same day it denied Defendants' motion to strike. *See Pl.'s Mot. to Amend*. (Dkt. 4-1); *see also Order Granting Leave to Amend*. (Dkt. 5-4 at 1.) On July 31, 2015, McClure filed his Second Amended Complaint, alleging the following eight causes of action:[6]

1) Violation of the Idaho Open Meeting Law with regard to the April 28, 2014 executive session against Lincoln County;

2) Violation of the Idaho Open Meeting Law with regard to the "secret session" occurring sometime between April 24, 2014 and April 28, 2014, against Lincoln County;

3) Breach of contract and the covenant of good faith and fair dealing against Lincoln County;

4) Wrongful discharge in contravention of public policy against Lincoln County;

5) Violation of the First Amendment (protected speech) pursuant to Section 1983, against Lincoln County and Defendants McConnell and Hubert in their individual and official capacities;

6) Violation of the First Amendment (right to petition the government) pursuant to Section 1983, against Lincoln County and Defendants McConnell and Hubert in their individual and official capacities;

7) Violation of the Fourteenth Amendment Due Process Clause pursuant to Section 1983 against Lincoln County and Defendants McConnell and Hubert in their individual and official capacities; and

8) Negligence against Lincoln County and Defendants McConnell and Hubert in their individual and official capacities.[7]

---

[6] Causes of action 3, 4, 5, 6, and 7 are alleged for the first time in the Second Amended Complaint.

[7] McClure alleges also civil conspiracy claims against McConnell and Hubert in their individual capacities. McClure acknowledges that "[c]ivil conspiracy is not, by itself, a claim for relief," and explains the existence of the conspiracy claim is only relevant insofar as it bears on the rules of evidence and joint liability. *2nd. Am. Compl.*, ¶ 112. (Dkt. 6-1 at 15.)

**REPORT, RECOMMENDATION, AND ORDER - 9**

*2nd. Am. Compl.* (Dkt. 6-1.)

On account of the newly alleged federal question causes of action, Defendants removed the case to this Court on August 17, 2015. (Dkt. 1.) The following week, Defendants filed a second Motion to Partially Dismiss, seeking to dismiss Claims 1, 2, 3, 4, and 7 of McClure's second amended complaint. (Dkt. 10.) In the same filing, Defendants included a motion for reconsideration of the state court's denial of their motion to strike certain paragraphs in the Hiatt Affidavit. *Id*. On December 30, 2015, McClure filed a motion for leave to amend to include claims for punitive damages. (Dkt. 27.)

Before addressing the motion for partial dismissal, the Court first will consider the related motion for reconsideration with respect to the state court's denial of the protective order regarding the Hiatt Affidavit. The Court will consider McClure's motion to amend to include punitive damages after its consideration of the motion for partial dismissal.

## MOTION FOR RECONSIDERATION (DKT. 10)

### 1. Standard of Law

The Court has the "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 885 (9th Cir.2001) (internal quotation marks and emphasis omitted). Although courts have authority to reconsider prior orders, they "should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice."

**REPORT, RECOMMENDATION, AND ORDER - 10**

*Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 618 n. 8 (1983)).

This Court has "distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) the need to correct a clear error or to prevent manifest injustice." *Gray v. Carlin*, 2015 WL 75263, at *2 (D. Idaho Jan. 6, 2015) (quoting *Louen v. Twedt,* 2007 WL 915226 (E.D.Cal. March 26, 2007)). Here, Defendants challenge the state court's decision on clear error grounds.

**2. Discussion**

Defendants ask this Court to reconsider the state  court's order denying Defendants' motion for protective order and motion to strike certain paragraphs in the Affidavit of Marsha Hiatt. (Dkt. 5-3.) Defendants argue the state court clearly erred because it failed to take into consideration Defendants' argument that the Hiatt Affidavit contains information protected from disclosure by the attorney-client privilege, a privilege that Hiatt could not waive given she was not a Commissioner (or client) at the time she provided the testimony in her Affidavit.

Defendants assert counsel for Lincoln County was present by telephone during the April 24, 2014 executive session of the Board of Commissioners for the purpose of providing advice about McClure's employment. Defendants contend that, because the entire conversation during the executive session related to McClure's employment, the entirety of what was discussed during the executive session is protected from disclosure.

**REPORT, RECOMMENDATION, AND ORDER - 11**

Accordingly, Defendants argue that the paragraphs in the Hiatt Affidavit that discuss decisions made regarding McClure's employment during the April 24, 2014 executive session, were protected from disclosure by the attorney-client privilege.[8] For the reasons that follow, the Court disagrees and will deny Defendants' motion for reconsideration.[9]

First, Defendants ask the Court to apply an overly broad and unsupported interpretation of the attorney-client privilege to the contents of the Hiatt Affidavit. The attorney-client privilege is intended to "encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). One of the main purposes of the attorney-client privilege is to protect "the giving of information to the lawyer to enable him [or her] to give sound and informed advice." *Id.* at 390. However, the attorney-client privilege should be narrowly construed "because it impedes full and free disclosure of the truth." *United States v. Martin,* 278 F.3d 988, 999 (9th Cir.2002). Therefore, the attorney-client privilege protects only confidential information that "passes between attorney and client for the purpose of giving or obtaining legal advice." *Walker v. County of Contra Costa,* 227 F.R.D. 529, 534 (N.D.Cal. Apr. 14, 2005).

It is not the least bit clear here that the entirety of the communications between and among the Commissioners and counsel during the executive session on April 24,

---

[8] Defendants acknowledged at the hearing before this Court that they never had an ethical concern regarding McClure's counsel's contact with Hiatt when obtaining the Affidavit. *See Ltr. From Thompson to Idaho State Bar.* (Dkt. 4-5.)

[9] The undersigned Magistrate Judge has the authority to issue an order, rather than a report and recommendation on the motion for reconsideration as the motion is non-dispositive. *See* 28 U.S.C. § 636(b)(1)(A). The district judge may reconsider any pretrial matters, "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*

**REPORT, RECOMMENDATION, AND ORDER - 12**

2014, were for the purpose of obtaining or giving advice. Therefore, it is not clear that the testimony in the Hiatt Affidavit regarding the decisions that were made relative to McClure's employment during that executive session is protected from disclosure by the attorney-client privilege.

Second, upon review of the challenged paragraphs in the Hiatt Affidavit and the record before this Court, Defendants have failed to demonstrate how these purported "communications" fall within the attorney-client privilege. The challenged paragraphs in the Hiatt Affidavit are as follows:

> 5. On Thursday, April 24, 2014 the Lincoln County Board of Commissioners decided that Planning and Zoning Administrator, Mr. Ray McClure, would be formally disciplined after granting interviews to the local media regarding a lawsuit he had filed against Lincoln County and Suzanne McConnell the Lincoln County Clerk and other work related issues.
>
> 6. The Board decided that Mr. McClure would be given a formal reprimand, but not be fired at that time, as he had no written or verbal disciplinary actions in his file for the entire time as an employee of Lincoln County.
>
> 7. Further disciplinary action would then be discussed by the Board after the formal reprimand had been completed, if necessary.
>
> ***
>
> 13. I had no previous knowledge that Commissioners McConnell and Hubert were going to fire McClure or appoint Suzanne McConnell to take his place. The only discussion we had was that the Lincoln County Board of Commissions on Thursday, April 24th agreed to a disciplinary action against McClure for his contact with the public, for various press interviews, and other work related issues. The subject of these interviews was the lawsuit file [sic] by McClure against the Lincoln County Board of Commissioners and Commissioner McConnell's wife.

Aff. Hiatt, ¶¶ 5-7, 13. (Dkt. 2-4.)

**REPORT, RECOMMENDATION, AND ORDER - 13**

The above paragraphs on their own do not appear to divulge communications or other information encompassed within the attorney-client privilege.[10] For instance, they do not state that Hiatt and the other Board members met with the attorney, provided information to the attorney in confidence, that the attorney provided them with advice, and that the Board acted upon that advice when making the disciplinary action described in the Hiatt Affidavit.[11]  In essence, Defendants are asking the Court to read much more context and "facts" into the Affidavit than is supported by the record.  In this regard, it also is not clear from the record that the state court was provided the necessary context to make a determination regarding application of the attorney-client privilege.  What is clear, however, is that: 1) Defendants failed to object to these paragraphs on this basis when the state court first considered the Hiatt Affidavit in connection with Defendants' first motion for partial dismissal; and 2) the state court months later ruled that the additional objection had been waived.  Based on this record, the Court finds the Defendants have failed to establish that the state court clearly erred when denying Defendants' motion to strike the paragraphs quoted above from the Hiatt Affidavit. Accordingly, the Court will deny Defendants' motion for reconsideration.

However, the parties should not infer from the denial of the motion to strike that the entirety of the testimony in the Hiatt Affidavit, including the challenged paragraphs, is admissible in this action for all purposes. If future objections are made to Hiatt's

---

[10] Indeed, Defendants' counsel himself did not appreciate the statements as such when objecting on grounds of relevancy and foundation at the time of the first hearing before the state court.
[11] Nor does the record include any information regarding whether and how the executive session was noticed.

**REPORT, RECOMMENDATION, AND ORDER - 14**

testimony regarding the executive session on April 24, 2014, whether such testimony is in an affidavit, or given during a deposition or at trial, the Court will take up such objections, including potential objections based upon the attorney client privilege, if a proper foundation for the objection is made by Defendants. In other words, Defendants' objection to the disclosure of attorney-client privileged information relative to the April 24, 2014 executive session is preserved, although overruled by the Court's denial of this motion for reconsideration, as it was by the state court.

## MOTION TO PARTIALLY DISMISS (DKT. 10)

Defendants' motion for partial dismissal requests the Court to dismiss from McClure's second amended complaint the following claims alleging: (1) violations of the Idaho Open Meeting Law; (2) wrongful discharge in contravention of public policy; (3) breach of contract and covenant of good faith and fair dealing; and (4) violation of the Fourteenth Amendment Due Process Clause under Section 1983. Defendants challenge the first and second claim, in part, pursuant to Fed. R. Civ. P. 12(b)(1) and challenge the second, third, and fourth claims under Fed. R. Civ. P 12(b)(6). For the reasons explained below, the Court will recommend denial in part, and granting in part, Defendants' motion.

### 1. Legal Standards

#### A. Rule 12(b)(1) Motion to Dismiss—Lack of Subject Matter Jurisdiction

A challenge to a plaintiff's standing under Rule 12(b)(1) draws into question the Court's subject matter jurisdiction. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) motion may be asserted either as a facial challenge to the complaint or a

**REPORT, RECOMMENDATION, AND ORDER - 15**

factual challenge. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id.* On the other hand, the defendant may launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." *Id.* Here, though Defendants do not specify the nature of their challenges, it appears the 12(b)(1) aspects of their motion to dismiss raise facial challenges to subject matter jurisdiction.

"In a facial attack, the complaint is challenged as failing to establish jurisdiction, even assuming all the allegations are true and construing the complaint in the light most favorable to plaintiff." *Blankenship v. McDevitt*, 2015 WL 4944395, at *1 (D. Idaho Aug. 19, 2015) (citing *Meyer*, 373 F.3d at 1039).  "When reviewing a facial challenge, the court is limited to the allegations in the complaint, the documents attached thereto, and judicially noticeable facts." *Id.* (citing *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3rd Cir. 2000)).

### B. Rule 12(b) (6) Motion to Dismiss—Failure to State a Claim

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations… it demands more than an unadorned, the-defendant-unlawfully-

**REPORT, RECOMMENDATION, AND ORDER - 16**

harmed-me accusation." *Id.* (internal quotations omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotations marks omitted).

**2. Discussion**

**A. Idaho Open Meeting Law Claims**

**i. Relevant Provisions of the Idaho Open Meeting Laws**

"Idaho Code sections 67-2340 through 67-2347 make up Idaho's 'open meeting law,' which imposes procedural requirements (e.g., notices of meetings, agendas, etc.) on public agencies to ensure citizens' access to the formation of public policy."[12] *Arnold v. City of Stanley*, 345 P.3d 1008, 1010 (2015). Specifically, the statute requires: "[a]ll meetings of a governing body of a public agency shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by this act." Idaho Code § 67-2342(1).

An exception to the "open to the public requirement" is made for meetings classified as "executive sessions." Section 67-2341(2) defines an "executive session" as "any meeting or part of a meeting of a governing body which is closed to any persons for deliberation on certain matters." Such sessions are permitted, among other reasons, "[t]o consider the evaluation, dismissal or disciplining of, or to hear complaints or charges brought against…[an] employee." § 67-2345(2). No executive session may be held,

---

[12] On July 1, 2015, the Idaho Legislature recodified Idaho's Open Meeting Law as Idaho Code §§ 74-201 through 74-208. All references herein are made to the law as it existed at the time of the alleged violations in 2014.

**REPORT, RECOMMENDATION, AND ORDER - 17**

however, "for the purpose of taking any final action or making any final decision." § 67-2345(3).

The statute provides enforcement mechanisms and remedies where there has been a violation of the Open Meeting Law. Section 67-2347(1) provides that, "[i]f an action, or any deliberation or decision-making that leads to an action, occurs at any meeting which fails to comply with the provisions of [the Act], such action shall be null and void." The Act provides a private cause of action to enforce compliance with the open meeting law: "[a]ny person affected by a violation of the provisions of this [Act] may commence a civil action…for the purpose of requiring compliance with provisions of this act." Idaho Code § 67-2347 (6).

### ii. Analysis

McClure alleges and seeks to hold Lincoln County liable for two violations of Idaho's Open Meeting Law. First, he alleges the Board violated the Open Meeting Law during the April 28, 2014 executive session when the Board made the final decision to terminate his employment with Lincoln County. Second, McClure alleges the Board violated the Open Meeting Law when McConnell and Hubert allegedly met "in secret," after the April 24, 2014 executive session, to make the final decision to terminate his employment. Lincoln County moves to dismiss both allegations pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that McClure lacks standing to bring a private enforcement action pursuant to the Idaho Open Meeting Law because McClure has failed to allege how the violations, if there were any, adversely affected him.

**REPORT, RECOMMENDATION, AND ORDER - 18**

In support of their standing argument, Defendants rely on the Idaho Supreme Court's recent decision in *Arnold v. City of Stanley*, 345 P.3d 1008, 1010 (2015).[13] The *Arnold* court explained that, to have standing to bring a private enforcement action under the Idaho Open Meeting Law, a plaintiff must establish he was adversely affected by the particular open meeting violation in addition to establishing an actual violation of the Open Meeting Law. *Id.*

In *Arnold,* plaintiffs sought to challenge a proposed city ordinance, the approval of which, plaintiffs alleged, would affect their property rights. *Id.* at 1009. The City provided notice of three public hearings and one regular city council meeting. *Id.* Because the public hearings finished early, the city council meeting began earlier than scheduled. *Id.* Prior to beginning the city council meeting, the City did not amend the notices it had provided or otherwise did not notify the public that the meeting would begin earlier than scheduled. *Id.* at 1010.

Plaintiffs had no intention of attending any of the hearings or the city council meeting. Instead, plaintiffs had requested specific statements be read into the city council meeting record as their testimony during discussion of the proposed ordinance they opposed. *Id.* According to the minutes, the statements were read at both the relevant public hearing and the city council meeting. *Id.* Following adoption of the ordinance, however, plaintiffs filed an action against the city under Idaho Code § 67-2347(6),

---

[13] When asked by the Court why Defendants did not challenge McClure's standing to claim the Idaho Open Meeting Law violations in their partial motion to dismiss the amended complaint in state court, Defendants explained the law on standing was not clear until the Idaho Supreme Court issued the *Arnold* decision, which occurred after Defendants filed their motion in state court.

**REPORT, RECOMMENDATION, AND ORDER - 19**

seeking to have the ordinance declared null and void because the City held the city

council meeting earlier than the time it was noticed, in violation of Idaho's Open Meeting

Law. *Id.*

The Idaho Supreme Court held the plaintiff property owners did not have standing

to bring a private enforcement action against the City, because the Open Meeting Law

violation—commencing a meeting earlier than noticed—did not affect the property

owners, who had no plans of even attending the meeting. *Id.* at 1013. The Court

explained: "The [plaintiffs] are in exactly the same position as they would have been had

the meeting started on time and strictly complied with every other element of the open

meeting law. Therefore, they were not 'affected by' the [violation]" *Id.*

Here, Defendants argue that, because McClure was invited into an executive

session on April 28, 2014, during which he was informed his employment was being

terminated, his presence cured the alleged violation of the Open Meeting Law—making a

final decision during executive session. Defendants contend any final decision to

terminate McClure's employment made during an executive session left McClure "no

worse off" than if his employment was terminated during an open meeting. Defendants

explained during argument before this Court that, if anything, terminating McClure's

employment during an executive session left McClure in a better position than if the

termination decision was made in public, inferring that it avoided public embarrassment

of McClure.

As applied here, the Court finds the *Arnold* decision offers little guidance.

Factually, *Arnold* could not be much different than the present case. In *Arnold*, the

**REPORT, RECOMMENDATION, AND ORDER - 20**

alleged violation involved a meeting which began earlier than noticed and the violation occurred during an open meeting. And, had the meeting in *Arnold* begun on time, the outcome likely would have been exactly the same.

Here, the alleged violations involved making a final decision regarding termination of McClure's employment during an un-noticed "secret" meeting between two county commissioners and taking the final action of terminating his employment during a closed executive session. Defendants' argument that McClure was not affected disregards the very policy behind the Idaho Open Meeting Law: transparency. "The Idaho Open Meeting Law was designed to ensure transparency of the legislative and administrative process within state and local governments." Office of the Attorney General, Idaho Open Meeting Law Manual 1 (2015). "Those who conduct meetings must remember this policy above all when deciding whether a meeting should be open. If a meeting is closed, there must be a compelling reason, supported by the statute itself, or by subsequent court rulings." *Id.*

The Court fails to find any support for Defendants' argument, especially with regard to their challenge to standing, that McClure was not adversely affected by the Board's decision to terminate his employment. Although McClure was present during the executive session when the termination action allegedly occurred, he was not afforded the benefit of having the termination decision made during an open meeting as required by the Open Meeting Law. During that open meeting, the public would have had the opportunity to be present for the vote, and may have commented on the decision or raised McConnell's and Hubert's alleged conflicts of interest. As argued by McClure's counsel

**REPORT, RECOMMENDATION, AND ORDER - 21**

at the time of the hearing before this Court, McClure's lawyer, whom he allegedly asked for three times during the executive session, (*2nd. Am. Compl.*, ¶ 15. (Dkt. 6-1 at 4)) could have been present during the public meeting and may have spoken on McClure's behalf.  Further, the Board members may have voted differently than they did during the "secret meeting" or the executive session.

The point is that no one knows whether or how the outcome, as it relates to the termination of McClure's employment, may have differed if Defendants had complied with the Idaho Open Meeting Law.  Therefore, the Court cannot conclude (and will not assume), as a matter of law as argued by Defendants, that McClure was not adversely affected by the alleged violation and has no standing to bring these claims. Therefore, it is recommended this aspect of Defendants' motion to dismiss be denied.

### B. Wrongful Discharge in Contravention of Public Policy Claims

McClure alleges wrongful termination in contravention of four different public policies: (1) freedom of speech guaranteed by Art. 1, § 9 of the Idaho Constitution; (2) right to petition the government guaranteed by the First Amendment to the United States Constitution; (3) openness in government guaranteed by Idaho's Open Meeting Law; and (4) public policy found in *McClure I* and the Idaho Tort Claims Act. For the purpose of this motion for partial dismissal, the Court will consider each alleged violation of public policy.

Defendants present three arguments supporting the dismissal of McClure's wrongful termination in contravention of public policy claim. First, Defendants argue the Court lacks subject matter jurisdiction over this claim because McClure failed to seek

**REPORT, RECOMMENDATION, AND ORDER - 22**

judicial review of the Board's termination decision. Second, they argue the claim is redundant, or displaces other corresponding alleged causes of action asserted in McClure's second amended complaint. And, they argue McClure's claim does not fit within the narrow scope of the public policy exception to the employment at-will rule.

### i. Standard of Law

Idaho recognizes "a narrow exception to the at-will employment presumption where the employer's motivation for the termination contravenes public policy." *Harris v. Treasure Canyon Calcuim Co.*, No. 4:13-CV-00472-BLW, 2015 WL 5611575, at *6 (D. Idaho Sept. 22, 2015)(quoting *Bollinger v. Fall River Rural Elec. Co-op., Inc.,* 152 Idaho 632, 272 P.3d 1263, 1271 (2012)). "A termination contravenes public policy only where an employee is terminated for engaging in some protected activity, which includes (1) refusing to commit an unlawful act, (2) performing an important public obligation, or (3) exercising certain legal rights and privileges." *Id.* To bring a successful claim under the public policy exception to the employment at-will presumption, "an employee must show (1) that [he] was engaged in a legally protected activity; and (2) that there is a causal relationship between [his] engagement in the protected activity and [his] termination." *Id.*

### ii. Idaho Constitution Public Policy

McClure alleges that, by terminating McClure's employment for talking to the media regarding his defamation lawsuit against Lincoln County (*McClure I*), Defendants retaliated against McClure for engaging in speech protected by Idaho Const. Art. I, § 9.

The Court first will consider Defendants' argument for dismissal under Rule 12(b)(1) on subject matter jurisdiction grounds. Defendants contend, because McClure

**REPORT, RECOMMENDATION, AND ORDER - 23**

did not seek judicial review of the Board's decision to terminate his employment, the Court is precluded from taking up McClure's wrongful termination in contravention of public policy claim. In making this argument, Defendants rely on the Idaho Supreme Court decision in *Ravenscroft v. Boise County*, 301 P.3d 271, 271 (Idaho 2013) and the state court's dismissal of McClure's wrongful termination claim.

In *Ravenscroft*, a Boise County employee sought review of the Board of Commissioner's final decision to terminate his employment. *Id.* Boise County filed a motion to dismiss the petition for review, arguing that the district court lacked jurisdiction to hear an appeal of a county personnel determination because the "act" of termination does not fall within I.C. § 31-1506's definition of "act, order, or proceeding" which are subject to judicial review. *Id. Ravenscroft* involved a single issue: whether a Board's decision to terminate a county employee can be brought as a claim for judicial review under the Idaho Administrative Procedures Act—the district court found in the affirmative, and the Idaho Supreme Court agreed. In reaching its conclusion, the *Ravenscroft* court considered the entirety of the termination decision:

> [T]he Board called Ravenscroft's termination an "action" and held a hearing regarding this action before coming to a final decision. Before terminating Ravenscroft, the Board served him with a Notice of Proposed Personnel Action-Termination and Notice of Suspension of Pay Pending Decision. Then, after holding the hearing, the Board issued a Notice of Decision Regarding Personnel Action-Termination of Employment. Therefore, the hearing regarding Ravenscroft's termination and the Board's final determination fall under the plain meaning of "any act, order or proceeding."

*Id.* at 274.

**REPORT, RECOMMENDATION, AND ORDER - 24**

The Court finds *Ravenscroft* offers little guidance regarding Defendants' argument that judicial review is a mandatory condition precedent to a wrongful termination claim filed by a county employee, here McClure. Factually, the "act" of termination in *Ravenscroft* was vastly different than the "act" of termination here, taken against an employee that neither party argued was "at-will." Here, the "act" consisted of McClure, an at-will employee, being invited into an executive session, where he was issued a written notice of termination. In *Ravenscroft*, the board's "act" consisted of a series of acts, including issuing the county employee a notice of pending termination, conducting a hearing, and then providing the county employee with a written notice of termination. In addition to the factual distinctions, the Court fails to find how *Ravenscroft* stands for the proposition that a plaintiff must file a petition for judicial review prior to bringing a wrongful termination action, or contract based claim. Defendants do not cite any other cases to support their conclusion and McClure offers no argument to the contrary in his response brief.[14]

Instead, Defendants rely upon the state court's dismissal of McClure's wrongful termination claim which was not even before the state court as a claim in his amended complaint at the time. *See Order re Plaintiff's Motions to Disqualify Counsel and Defendant's Motion to Dismiss*. (Dkt. 2-15 at 5.) Specifically, the state court ruled it

---

[14] At the hearing before this Court, counsel for Plaintiff clarified that he believed, based on how the motion was phrased, Defendants' arguments with regard to the wrongful termination in contravention of public policy claim were presented as a motion for reconsideration of the state court's decision to allow McClure to amend his complaint.

**REPORT, RECOMMENDATION, AND ORDER - 25**

lacked subject matter jurisdiction over McClure's "wrongful termination" claim against

Lincoln County because:

> [S]uch claims relate to the merits of the Board's termination action, which under I.C. § 31-1506 and the [Idaho] Supreme Court's holding in *Ravenscroft*, required a mandatory filing of a judicial review petition. Since the Court finds that McClure has failed to file such a petition, this Court thus concludes that is does not have subject matter jurisdiction over any claims against Lincoln County except those relating to the alleged Open Meeting Law violations.

*Id.* at 6.

The Court declines to rely on the state court's decision for three reasons. First, it is

unclear in the state court's ruling how it reached the conclusion that *Ravenscroft* and I.C.

§ 31-1506, when read together, mandated the filing of a judicial review petition before

filing a contract based wrongful termination action in district court. As stated directly

above, *Ravenscroft* permits judicial review of termination decisions, but does not hold

that judicial review is mandatory. Likewise, I.C. § 31-1506 does not specifically require

judicial review of a board's termination decision prior to filing a civil contract based

action in district court.

Second, the state court, for reasons unclear in the record, analyzed McClure's

negligence claim against Lincoln County as a wrongful termination claim. The amended

complaint does not articulate a claim for wrongful termination; instead, it alleges causes

of action under the Open Meeting Law and *negligence* against all Defendants. (Dkt. 1-4.)

The Partial Motion to Dismiss sought to dismiss the *negligence* claims for lack of subject

matter jurisdiction. (Dkt. 1-10.) And, during the state court hearing on the motion to

dismiss, the Defendants argued the *negligence* claims should be dismissed for lack of

**REPORT, RECOMMENDATION, AND ORDER - 26**

subject matter jurisdiction. For reasons unclear in the record, the state court analyzed McClure's negligence claim against Lincoln County, a claim sounding in tort, as a wrongful termination claim, a claim sounding in contract. [15]

Third, the state court's decision to dismiss the "wrongful termination" claim for lack of subject matter jurisdiction is inconsistent with its later decision to allow McClure to amend his complaint to include a wrongful termination in contravention of public policy claim against Lincoln County. *See Order Granting Motion for Leave to Amend Pursuant to I.R.C.P. 15(A).* (Dkt. 5-4 at 1.) For these reasons, the Court finds the state court's reasoning with regard to the dismissal of the wrongful termination claim unpersuasive. However, the Court must continue its analysis and consider Defendants' alternative arguments for dismissal with respect to this aspect of McClure's claim for wrongful termination in contravention of public policy.

With regard to Defendants' redundancy argument, the Court finds this aspect of McClure's claim—the public policy which identifies freedom of speech under the Idaho Constitution—is not redundant to other claims alleged in McClure's second amended complaint. At the hearing before this Court, Defendants argued the possibility of double recovery if McClure is permitted to bring this claim in addition to his First Amendment freedom of speech claim brought pursuant to Section 1983. However, the Court disagrees with Defendants' concern for at least two reasons.  First, if both claims proceed to trial

---

[15] "[A] cause of action for wrongful termination of a contract of employment at will based on a violation of public policy is a contract cause of action which results in contract damages." *Hummer v. Evans*, 923 P.2d 981, 987 (Idaho 1996).

**REPORT, RECOMMENDATION, AND ORDER - 27**

and the jury determines all elements are proven on all elements of proof for each claim, the jury would not be allowed to award double recovery. Second, the damages available under each claim may not be identical. For instance, McClure's claim under Section 1983 might not allow back wages, where his wrongful termination claim, may.[16]

Finally, the Court finds this claim fits within the narrow public policy exception because McClure alleges the termination of his employment was in retaliation for his engagement in speech protected by the Idaho Constitution. He alleges also a causal connection between engaging in the protected activity and his termination—that he was terminated on account of interviews he provided to the media with regard to *McClure I*.[17]

Accordingly, the Court will recommend Defendant's motion to dismiss McClure's wrongful termination in contravention of public policy claim, alleging a violation of the Idaho Constitution, be denied.

### iii. U.S. Constitution and Idaho Open Meeting Law Public Policies

McClure alleges that, by terminating McClure's employment for talking to the media regarding his defamation lawsuit (*McClure I*) against Lincoln County, Defendants retaliated against him also for engaging in the right to petition the government pursuant to the First Amendment to the United States Constitution. McClure further alleges that the Board's termination decision, made during a closed executive session, contravenes the strong public policy of openness in government guaranteed by Idaho's Open Meeting

---

[16] The availability of the types of damages were not briefed by the parties, and at this point, are premature for the Court's review.

[17] This claim is not specifically duplicative to McClure's Section 1983 claim. In his Section 1983 claim, although he claims violation of the First Amendment to the United States Constitution, the specific provision of the Idaho Constitution sets forth a specific Idaho public policy, meeting the requirement that the plaintiff specify a public policy in his wrongful termination claim.

**REPORT, RECOMMENDATION, AND ORDER - 28**

Law. Defendants argue these public policy exceptions to the employment at-will doctrine have alternative remedies and therefore should be dismissed.

When a statute in question "authorizes specific remedies... its provisions cannot also be used to establish the public policy upon which a breach of at-will employment contract is based." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 561, 212 P.3d 982, 991 (2009). "To hold otherwise would allow plaintiff[] to recover twice for the same underlying facts." *Id.* For example, in *Van*, an employee brought a claim for wrongful termination in violation of public policy based upon an allegation that he had been fired in contravention of the Idaho Whistleblower Act. *Id.* at 561. The Idaho Supreme Court ruled that, because the Whistleblower Act itself authorized specific remedies for recovery, it could not be used also to establish a common law public policy claim.

Here, 42 U.S.C. § 1983 provides an avenue for private enforcement and recovery for civil rights violations protected by the United States Constitution, such as McClure's First Amendment Petition Clause claim. Likewise, and as discussed above, the Idaho Open Meeting Law provides enforcement mechanisms and remedies where there has been a violation. Specifically, the Act provides a private cause of action to enforce compliance with the open meeting law: "[a]ny person affected by a violation of the provisions of this act may commence a civil action...for the purpose of requiring compliance with provisions of this act." Idaho Code § 67-2347 (6).

Because these causes of action authorize remedies, they cannot also be used to establish the public policy upon which breach of an at-will employment contract claim is based. To hold otherwise would allow McClure to recover twice for the same underlying

**REPORT, RECOMMENDATION, AND ORDER - 29**

facts and law violations. Accordingly, the Court will recommend these aspects of McClure's claim for wrongful termination in contravention of public policy be dismissed.

### iv. Misc. Idaho Tort Law Public Policy Claim

McClure alleges that, by retaliating against him for defending himself in court against Suzanne McConnell's defamation of him, Defendants violated public policy which can be found in "*McClure I* including, but not limited to I.C. § 6-901." McClure does not specify what particular public policy was violated, and does not cite to or attach any documents from *McClure I* to his second amended complaint. Accordingly, the Court will recommend this aspect of McClure's wrongful termination in contravention of public policy claim be dismissed. *See Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 579, 329 P.3d 356, 361 (2014), *review denied* (July 31, 2014). ("It is simply insufficient to point generally to an act compromising a chapter of the Idaho Code and leave it to the court to match up the alleged misconduct with an applicable provision of the chapter.").

### C. Claims re: Lincoln County Personnel Policy

### i. Relevant Lincoln County Personnel Policy Provisions[18]

The Introduction, located on the first page of the Lincoln County Personnel Policy handbook (LCPP), sets forth discretionary language as follows:

---

[18] Pursuant to the incorporation by reference doctrine, the Court's consideration of the LCPP handbook referenced in both the second amended complaint (Dkt. 6-1) and motion to partially dismiss (Dkt. 10), but attached elsewhere in the record (Dkt. 1-10), does not convert the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (The incorporation by reference doctrine "permits [a Court] to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.") (internal quotations omitted).

**REPORT, RECOMMENDATION, AND ORDER - 30**

> No employee handbook can anticipate every circumstance or question about policy. The need may arise to change policies described in this handbook. The County therefore reserves the right to revise, supplement, or rescind any policies or portion of the handbook from time to time as it deems appropriate, in its sole and absolute discretion.

*Lincoln County Personnel Policy*, 1. (Dkt. 2-8 at 10.)

Set forth under the heading "101 Nature of Employment," the LCPP provides the following regarding the voluntarily relationship between Lincoln County and its employees:

> Employment between Lincoln County and the employee is voluntarily entered into by both parties. Either the employee or Lincoln County may terminate the employment relationship at any time

*Id.* at 2.

On the same page, under the same heading, the LCPP provides a disclaimer and additional discretionary language which states:

> Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between the County and any of its employees. The provisions of the handbook have been developed at the discretion of the Board and may be amended or cancelled at any time, at the Board's sole discretion.

*Id.*

The LCPP provides, in a section titled "Employment Termination," a non-exclusive list of most common reasons for termination, which includes: (1) Resignation; (2) Discharge; (3) Layoff; (4) Medical Termination; and (5) Retirement. *Id.* at 15-16. (Dkt. 2-8 at 24-25.) Immediately following the list, the LCPP explains an additional step to be taken in cases where an elected official takes a termination action. Specifically, the LCPP provides:

**REPORT, RECOMMENDATION, AND ORDER - 31**

> Where applicable all elected officials shall discuss employment termination with ICRMP and the Prosecuting Attorney prior to initiating termination proceedings against an employee.

*Id.*

### ii. Breach of Express Contract and Covenant of Good Faith and Fair Dealing Claims

 McClure alleges Lincoln County breached both his employment contract and the implied covenant of good faith and fair dealing by failing to carry out certain express obligations and benefits of his employment as provided by the LCPP. He alleges the County violated the following LCPP provisions:

> Where applicable all elected officials shall discuss employment termination with the ICRMP and the Prosecuting Attorney prior to initiating termination proceedings against an employee.
>
> ***
>
> Regular full time and part time employees enjoy certain benefits and privileges related to their jobs, which include specific grievance and appeal rights as described under other policies of this handbook.

*Lincoln County Personnel Policy*, 22, 16. (Dkt. 2-8 at 25, 31.) More specifically, McClure alleges that, because McConnell and Hubert were elected officials, he was entitled to have their termination decision reviewed by the Board, the Idaho Counties Risk Management Program (ICRMP), and the prosecuting attorney before they initiated the proceedings to terminate McClure's employment. And, he alleges he was entitled to certain grievance and appeal rights to challenge his termination—which the County did not permit McClure to pursue. Defendants contend McClure's claims must fail because

**REPORT, RECOMMENDATION, AND ORDER - 32**

the LCPP's general disclaimer indicates the County did not intend for the LCPP to create employment rights.

For the reasons explained more fully below, the Court finds the LCPP does not create enforceable contractual rights; thus, the County did not breach McClure's employment contract and did not breach the implied covenant of good faith and fair dealing. The Court will recommend these claims be dismissed.

### 1. Breach of Contract

"Whether an employee manual constitutes an element of an employment contract is generally a question of fact unless the handbook 'specifically negates any intention on the part of the employer to have it become a part of the employment contract.'" *Nix v. Elmore Cty.*, 346 P.3d 1045, 1052 (2015) (citing *Mitchell v. Zilog, Inc.,* 874 P.2d 520, 523-24 (1994)). Thus, the Court must first examine the county policy manual to determine whether it "specifically negate[s] any intention of contract formation."[19] *Zilog*, 874 P.2d at 524.  If not, the Court "must then determine if there is a question of fact as to whether the parties intended the [LCPP] to express a term of the employment contract." *Nix*, 346 P.3d at 1052.

The parties both rely on the recent Idaho Supreme Court decision in *Nix v. Elmore County*, 346 P.3d 1045, 1054 (Idaho 2015), to support their arguments. In that case, a county employee alleged that a provision in the Elmore County Personnel Policy Manual, which provided the employee with a pre-termination hearing, constituted

---

[19] When applicable, the Court considers also in its analysis any written or oral statements made by the employer to the employee that would negate the intention of contract formation. However, McClure's second amended complaint relies solely upon the LCPP. *Id.*

**REPORT, RECOMMENDATION, AND ORDER - 33**

part of the employee's contract, and thus, was an enforceable right.[20] *Id.* at 1051-52. The

*Nix* court, however, declined to find the provision binding upon Elmore County because

the personnel policy contained: (1) an explicit provision which disclaimed Elmore

County's intent to have the provisions in the policy become part of the employment

contract; and (2) language which informed county employees "that the terms in the policy

are *discretionary*" and subject to change at any time." *Id.* at 1052. (emphasis in original).

The county personnel policy in *Nix* provided the following disclaimer:

> THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH ELMORE COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE GOVERNING BOARD AND UNLESS IT IS SIGNED AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT.

*Id.* at 1049.  (bold font omitted). Further, the discretionary language in *Nix* read as

follows:

> …the terms set forth in this booklet reflect public entity policy at the time of its printing, but they are subject to change at any time, after notifying the Elected Officials at the discretion of the Elmore County Board of Commissioners…

*Id.*

The *Nix* court reasoned the above statements, when read together with the policy

manual as a whole, did not create contractual rights. *Id.* at 1052. Rather, the provisions in

---

[20] The employee in *Nix* relied solely on the language of the policy and "did not point to any signed contract or any other admissible evidence to indicate that the [personnel policy] created enforceable contract rights and in particular, the right to a pre-termination hearing." *Id.*

**REPORT, RECOMMENDATION, AND ORDER - 34**

the personnel policy manual were "more aptly characterized as guidelines and expectations" of employment. *Id.*

Defendants compare the disclaimer and discretionary language of the personnel policy manual in *Nix* to the LCPP and argue that, because the provisions in each policy are nearly identical, the LCPP, like the personnel policy manual in *Nix*, cannot be read to create enforceable contractual rights against Lincoln County. McClure, without citing legal authority, argues the LCPP lacks a "meaningful disclaimer" because it is not printed or published in a noticeable or prominent font. Alternatively, McClure, relying on a statement made in the *Nix* concurrence, argues even if the disclaimer is effective, it merely stands for the proposition that the disclaimer precludes the LCPP as a whole from becoming part of the employment contract; it does not preclude individual provisions from becoming part of the contract.

The Court finds here that the disclaimer and discretionary language in the LCPP specifically negates Lincoln County's intention of contract formation. Like the personnel policy manual in *Nix* which disclaimed Elmore's County's intent for the policy to become a contract, the LCPP contains similar language, and even more specific language. The *Nix* policy manual included a blanket disclaimer indicating the policy manual as a whole is not a contract, but the LCPP's disclaimer language is narrowed to apply to each policy. Specifically it states:

> Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between the County and any of its employees.

*Lincoln County Personnel Policy*, 2. (Dkt. 2-8 at 11.)

**REPORT, RECOMMENDATION, AND ORDER - 35**

Further, the LCPP contains discretionary language similar to the discretionary language in *Nix,* notifying the employee that the personnel policy manual is subject to change at any time. In fact, the LCPP contains not one, but two discretionary language provisions. Specifically, the LCPP states:

> The provisions of the handbook have been developed at the discretion of the Board and may be amended or cancelled at any time, at the Board's sole discretion.
>
> ***
>
> No employee handbook can anticipate every circumstance or question about policy. The need may arise to change policies described in this handbook. The County therefore reserves the right to revise, supplement, or rescind any policies or portion of the handbook from time to time as it deems appropriate, in its sole and absolute discretion.
>
> *Id.* at 1, 2. (Dkt. 2-8 at 10-11.)

The LCPP disclaimer and discretionary language, when read together with the policy manual, cannot be read to create enforceable contractual rights between Lincoln County and McClure. McClure does not allege the existence of a signed contract or any other admissible evidence to support his allegation that the personnel policy created an enforceable contract.  Merely alleging the disclaimer is "less than meaningful" because the font is not prominent is not enough on its own to negate the County's intention that the provisions in the personnel policy were not to become part of McClure's employment contract.

McClure, in one paragraph in his response to the motion to dismiss, points to and relies on a statement in the *Nix* concurrence for the proposition that the disclaimer

**REPORT, RECOMMENDATION, AND ORDER - 36**

precludes the handbook as a whole from becoming part of the employment contract, and argues the individual provisions of a personnel policy can become part of the contract. The specific language follows:

> The disclaimer means that the policy, in whole, does not constitute a contract. It does not mean that individual provisions contained in the Policy may not be part of the employer employee contract.

*Nix,* 346 P.3d at 1056. (J. Jones and J. Horton, *concurring*). McClure's argument fails for two reasons. First, as explained above, the disclaimer language in the LCPP is stronger than the language in the Elmore County policy manual —the LCPP disclaimer specifically applies to the individual provisions rather than the policy as a whole. Second, the concurrence in *Nix,* at least the statement upon which McClure relies, contradicts the conclusion of the majority opinion, and reads much like a dissent. *C.f. Nix v. Elmore County*, 346 P.3d 1045, 1054 (Idaho 2015) ("Because there was a disclaimer in the ECPP explicitly stating that the ECPP was not a contract between employees and Elmore County, the provision providing for a pre-termination hearing is not binding on Elmore County").

Because the LCPP provisions are not part of McClure's employment contract and did not create enforceable contract rights between Lincoln County and McClure, no breach occurred. Accordingly, the Court will recommend McClure's breach of contract claim be dismissed for failure to state a claim upon which relief can be granted.

### 2. Breach of Covenant of Good Faith and Fair Dealing

McClure argues Lincoln County breached the implied covenant of good faith and fair dealing when it failed to review his termination decision with ICRMP, the county

**REPORT, RECOMMENDATION, AND ORDER - 37**

prosecutor, and the Board, and also by not providing him with an appeal to challenge his termination.

Idaho has long recognized a cause of action for breach of the implied covenant of good faith and fair dealing. *See Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 778 P.2d 744 (1989), *modified by Sorensen v. Comm Tek, Inc.,* 118 Idaho 664, 799 P.2d 70 (1990). This covenant is found in all employment agreements. *Mitchell v. Zilog,* 125 Idaho 709, 715, 874 P.2d 520, 526 (1994); *Sorensen,* 118 Idaho at 669, 799 P.2d at 75. The covenant requires only that the parties perform in good faith the obligations imposed by their agreement. *Jenkins v. Boise Cascade Corp.,* 141 Idaho 233, 242–43, 108 P.3d 380, 389–90 (2005). Generally, the covenant is breached when an action by one party "violates, qualifies or significantly impairs *any benefit or right* of the other party under an employment contract, whether express or implied." *Metcalf,* 116 Idaho at 627, 778 P.2d at 749 (emphasis added).

As discussed above, the LCPP provisions are not part of McClure's employment contract and did not create enforceable contract rights between Lincoln County and McClure. Because the LCPP did not create contractual rights, Lincoln County did not "violate, qualify, or significantly impair" any benefit or right of McClure. The implied covenant of good faith and fair dealing does not create new duties that are not inherent in the employment relationship. McClure does not allege in his complaint, nor does he make any argument in response to the motion to dismiss to suggest that the County failed to perform, in good faith, the obligations under an employment agreement. Accordingly, the

**REPORT, RECOMMENDATION, AND ORDER - 38**

Court will recommend the breach of covenant of good faith and fair dealing claim be dismissed for failure to state a claim upon which relief can be granted.

### D. 14th Amendment Due Process Clause Claim

The Fourteenth Amendment to the United States Constitution protects individuals from the deprivation of liberty or property by the government without due process. A Section 1983 claim based upon procedural due process contains three elements: (1) a liberty or property interest protected by the United States Constitution; (2) a deprivation of that interest by the government; and (3) a denial of adequate procedural protections. *Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir.1993).

To state a claim under the Due Process Clause, McClure must first establish he possessed a property interest deserving of constitutional protection. *Brewster v. Bd. Of Educ. Of the Lynwood Unified Sch. Dist.,* 149 F.3d 971, 982 (9th Cir.1998); *see also Gilbert v. Homar,* 520 U.S. 924, 928–29 (1997). If a property interest exists, the essential requirements of due process are notice and an opportunity to respond. *See Cleveland Bd. Of Educ. v. Loudermill et al.,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Due Process Clause does not create substantive property rights; property rights are defined instead by reference to state law. *Portman,* 995 F.2d at 904.

To determine whether McClure's due process rights were violated, the Court first must determine whether McClure possessed a constitutionally protected property interest in continued employment. *Dyack v. Commonwealth of N. Mariana Islands,* 317 F.3d 1030, 1033 (9th Cir.2003) (citing *Loudermill,* 470 U.S. at 538). To establish a property interest, a person must have "a legitimate claim of entitlement to it," and such claim may

**REPORT, RECOMMENDATION, AND ORDER - 39**

be based upon a rule or policy that secures an interest in continued employment or that creates a legitimate claim to it. *See Bd. Of Regents v. Roth,* 408 U.S. 564, 577, 578, (1972). *See also Sonoda v. Cabrera,* 255 F.3d 1035, 1040 (9th Cir. 2001) ("An individual 'has a constitutionally protected property interest in continued employment … if he has a reasonable expectation or a 'legitimate claim of entitlement' to it, rather than a mere 'unilateral expectation.' ") (citation omitted).

The long standing rule in Idaho is that, unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is presumed to be at-will of either party and the employer may terminate the relationship at any time and for any or no reason, without incurring liability. *See Bollinger v. Fall River Rural Elec. Coop., Inc.,* 272 P.3d 1263, 1269 (Idaho 2012). McClure clarified at the hearing before this Court and in his briefing that he does not dispute that McClure's employment status with Lincoln County was at-will. However, despite his at-will employment status, McClure argues the Lincoln County personnel policy, when viewed as a whole, placed limitations on the reasons for his discharge, and thus, created a property interest in his continued employment with Lincoln County.

"Statements made and policies promulgated by the employer, whether in an employment manual or otherwise, may give rise to such an implied-in-fact agreement." *Id.* If the personnel policy, when viewed as a whole, places limitations on the reasons for discharge, then the policy may create a property interest for continued employment. *Brown v. Valley County*, 2013 WL 1453368 *6 (D. Idaho 2013).

**REPORT, RECOMMENDATION, AND ORDER - 40**

For example, in *Brown,* the plaintiff county employee filed a complaint against Valley County, asserting claims under 42 U.S.C. § 1983 for deprivation of due process arising out of Brown's constitutional property interest in his employment with Valley County. *Id.* at *1. While Brown conceded he did not have a contractual right to continued employment, he argued that he nonetheless held a legitimate claim of entitlement to continued employment based upon the entirety of Valley County's policy manual provision which rebutted any presumption that his employment status was at-will. *Id.* at *5. Valley County moved for summary judgment (Brown also moved for partial summary judgment on the same issue), arguing that the disclaimer in the county's policy manual preserved Brown's at-will status under Idaho law, leaving Brown without a constitutionally-protected property interest in continued employment. *Id.* at *1. The Court disagreed.

Valley County's policy manual stated that an employee is at-will during the 90–day introductory period, but was silent as to whether an employee retains the at-will moniker after those 90 days—instead, employees were told that Valley County's policy requires "cause related to performance of their job duties or other violations of this policy" before an adverse employment action may be taken against an employee. *Id.* at *6. In addition, the Court noted the policy lacked an emphatic at-will acknowledgment. *Id.* at *7.

The Court concluded that Valley County's policy manual disclaimer, without more, could not preserve the at-will status of Brown's employment as a matter of law. *Id.* at *9. ("Neither the contract disclaimer nor the discretionary nature of the policy

**REPORT, RECOMMENDATION, AND ORDER - 41**

manual's disciplinary rules are sufficient to negate the effect of the stand-alone provision requiring cause related to performance of job duties or other violations of the policy for termination."). That is, absent any express affirmation of an at-will employment relationship, a "reasonable inference" existed that, "after the 90–day introductory period, employment was no longer 'at-will' given the mandatory nature of the 'for cause' paragraph excluding reference to any other part of the Policy Manual." *Id.* at *7.

Because this inference limited the reasons for which Brown's employment could be terminated, the Court granted Brown's motion for partial summary judgment and found that Brown was not an at-will employee, but instead had established a protected property interest in his continued employment. *See id.* at *10.

Here, McClure argues that the LCPP's reference to grievance and appeal rights following his termination establishes, as a matter of law, a constitutionally protected property interest, entitling him to due process protection. Defendants disagree, and contend the disclaimer, the discretion provisions, and various references to an employees' "at-will employment" status in the Policy Manual, preserved McClure's at-will status under Idaho law, leaving McClure without any constitutionally protected property interest in his employment.[21]

Unlike the Valley County policy in *Brown,* which is silent as to the employee's status (except as it applies to an employee's introductory period), the LCPP explicitly describes its employees' status as "at will" twice. First, on the second page of the policy

---

[21] McClure did not respond to this argument in his response to the motion to partially dismiss. (Dkt. 20.)

**REPORT, RECOMMENDATION, AND ORDER - 42**

under the heading "Employment" and subheading "Nature of Employment," the LCPP

provides:

> Employment between Lincoln County and the employee is voluntarily entered into by both parties. *Either the employee or Lincoln County may terminate the employment relationship at any time*.

Next, on the sixth page of the policy under the heading "Employment Status and

Records" and subheading "Employment Categories," the LCPP provides:

> It is the interest of the County to clarify the definitions of employment classifications so that employees understand their employment status and benefit eligibility. These classifications *do not guarantee employment for any specified period of time*. Accordingly, *the right to terminate the employment relationship <u>at will</u> at any time is retained by both the employee and the County*.

Further, unlike the Valley County policy provision in *Brown* which contained "for

cause" language, limiting the reasons the county could terminate its employees after the

introductory period, the LCPP policy contains no such language. McClure relies upon the

LCPP policy provision which provides county employees with certain grievance and

appeal benefits to demonstrate his property interest in continued employment. However,

the provision does not include "for cause" language limiting termination. In fact, the

provision McClure relies upon is directly preceded by the "at will" language directly

referred to above on the sixth page of the LCPP.

Under *Brown*, the undisputed factual details present here—(1) the LCPP

disclaimer, (2) the discretionary nature of the LCPP, and (3) the various references in the

policy to the employee's "at will" status—leave no room to rebut the presumption of

McClure's at-will employment with the County. *See Cameron v. Owyhee County*, 2011

**REPORT, RECOMMENDATION, AND ORDER - 43**

WL 2945820 (D. Idaho July 20, 2011) (finding that the express at-will provision stated clearly in the personnel handbook, not the lack of a contract, was determinative of the due process claim). McClure's at-will employment status was exactly as described in the LCPP; no other provision or contract supports a finding to the contrary. Therefore, McClure cannot establish a legitimate expectation of continued employment which is an essential element of his Section 1983 claim for violation of procedural due process under the Fourteenth Amendment. Therefore, the Court will recommend this claim be dismissed.

### E. Dismissal of Hubert and McConnell in their Official Capacities

Claims five through eight of McClure's complaint[22] are brought against all defendants: Lincoln County, Lincoln County Board of Commissioners, Cresley McConnell, and Roy Hubert. McConnell and Hubert are each sued in both their official capacities and their individual capacities. The individual Defendants (McConnell and Hubert) argue these claims should proceed against them only in their individual capacities and that the claims against them in their official capacities should be dismissed because Lincoln County is a named party defendant. McClure does not explain why he needs to engage in the redundancy of naming the individual Defendants in their official capacity in addition to Lincoln County and concedes that these official capacity claims may be dismissed.

---

[22] (5) Retaliation for Protected Speech; (6) Retaliation for Invoking the Petition Clause of the U.S. Constitution; (7) Violation of Plaintiff's Due Process Rights; and (8) Negligence.

Accordingly, the Court will recommend that all claims against Defendants McConnell and Hubert in their official capacities be dismissed. *Timothy v. Oneida County et al.*, 14-cv-362-BLW, Dkt. 23, *22 (D. Idaho April 30, 2015) (dismissing § 1983 claim against county commissioners in their official capacity as being redundant).

## MOTION FOR LEAVE TO AMEND TO INCLUDE CLAIMS FOR PUNITIVE DAMAGES (DKT. 27)

On December 30, 2015, McClure filed a Motion for Leave to Amend to Include Claims for Punitive Damages (Dkt. 27) to the following causes of action: (1) breach of contract claim against Lincoln County; (2) wrongful discharge in contravention of public policy against Lincoln County; and (3) violations the First Amendment rights to freedom of speech and to petition the government, and violation of the Fourteenth Amendment Due Process Clause, all pursuant to Section 1983 against Hubert and McConnell in their individual capacities.

Because the Idaho standard for punitive damages is slightly different than the standard for punitive damages for Section 1983 claims, the Court will address the state and federal claims separately below.[23]

## 1. Punitive Damages for McClure's Section 1983 Claims

### A. Section 1983 Standard for Punitive Damages

With regard to punitive damages against defendants in their individual capacities, the United States Supreme Court has held that "a jury may be permitted to assess punitive

---

[23] McClure's Motion for Leave to Amend to Include Punitive Damages does not distinguish between the two different standards (federal and state) for bringing punitive damages. However, counsel for McClure did acknowledge the difference in their reply and during the hearing.

**REPORT, RECOMMENDATION, AND ORDER - 45**

damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983); *see also Ngo v. Reno Hilton Resort Corp.,* 140 F.3d 1299 (9th Cir.1998) (applying heightened standard for punitive damages in employment law civil rights context).

The United States Court of Appeals for the Ninth Circuit has concluded punitive damages also may be predicated on the plaintiff proving that the Defendant's conduct was oppressive. *Dang v. Cross*, 422 F.3d 800, 810-11 (9th Cir. 2005) ("[W]hen the plaintiff's theory for awarding punitive damages is based upon an alleged act of oppression and there is a foundation in the evidence for an instruction on this theory, the district court must give such an instruction."). "An act or omission is oppressive, however, 'if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person.'" *Dang*, 422 at 809 (citing Fountila, 571 F.2d at 493; *McKinley,* 732 F.2d at 1326 n. 2.)

### B.  Punitive Damages against McConnell and Hubert in their individual capacities for violations of Section 1983

McClure seeks to include punitive damages with his Section 1983 claims against Defendants McConnell and Hubert. His punitive damages claims are predicated on the theory that McConnell and Hubert acted oppressively against McClure by abusing their

**REPORT, RECOMMENDATION, AND ORDER - 46**

official positions by retaliating against McClure by terminating his employment for speaking to the media.

McClure focuses on the following facts to support his argument that Defendants abused their power by terminating his position as Planning and Zoning Administrator:

> (1) Because of the events which transpired from the previous lawsuit against Lincoln County and Suzanne McConnell, McConnell's wife, McConnell had previously recused himself from matters relating to McClure; however, he did not recuse himself from the decision to reprimand and terminate McClure. (Dkt. 27-1 at 1-9);

> (2) On or around April 15, 2014, McClure spoke disfavorably to the media regarding his previous lawsuit and its aftermath against Lincoln County and Suzanne McConnell (Dkt. 27-4 at 1);

> (3) On April 24, 2014, Lincoln County Commissioners, which included McConnell and Hubert, met in an executive session and decided to reprimand McClure for speaking to the media. (Dkt. 27-1 at 9);

> (4) The other County Commissioner, Hiatt, recused herself from matters relating to McClure's employment after the April 24, 2014 executive session. (*Id.)*;

> (5) Sometime after the executive session, the remaining Commissioners (McConnell and Hubert) made the decision to terminate McClure. (*Id.*); and

> (6) After McClure's termination, Suzanne McConnell was appointed to fill McClure's position as Planning and Zoning Administrator. (*Id.*)

In addition to the above facts, McClure relies on several online news articles relating to *McClure I*, its aftermath, and McClure's termination of employment. *See* (Dkts. 27-3, 27-4, 27-5.) Alternatively, McClure contends Defendants' knowing violation of his First Amendment right to freedom of speech, alone, is enough to allow the issue of punitive damages to proceed.

**REPORT, RECOMMENDATION, AND ORDER - 47**

Defendants argue McClure's factual evidence does not support a claim for punitive damages with respect to his Section 1983 claims against McConnell and Hubert for several reasons. First, with regard to the Hiatt Affidavit, Defendants argue, as they did in the motion for reconsideration, that all facts supported by the Hiatt affidavit are inadmissible pursuant to the attorney-client privilege. They allege the evidence of the First Amendment Freedom of Speech violation does not support the inclusion of punitive damages, because the elements of a first amendment retaliation claim do not require a showing of Defendants' state of mind. Further, Defendants argue the media articles submitted by McClure do not contain evidence of McConnell's or Hubert's state of mind.[24]

Defendants contend also that neither McConnell nor Hubert acted with an evil intent or acted oppressively when they made the decision to terminate McClure's employment. With regard to McConnell's alleged conflict of interest, Defendants offer evidence to support that McConnell was not part of the decision to appoint his wife, Suzanne McConnell, to take over McClure's position as Planning and Zoning Administrator after his termination. *Dec. Castleton, Ex. A—Deposition of Hubert,* p. 101, ll. 23-25, p. 102, ll.1-3. (Dkt. 30-2 at 4.) Defendants explain Hubert appointed Suzanne McConnell, and prior to her appointment, Hubert sought advice from the Idaho Counties

---

[24] In "Lincoln County GOP Reverses McConnell Endorsement," no party to this lawsuit is quoted or contributed to the article. (Dkt. 27-3 at 1-2); The "County Gets Hit With Lawsuit" relates to *McClure I* and contains no allegations regarding McClure's termination as Planning and Zoning Administrator (Dkt. 27-3 at 3); The third article discusses McClure's own perceptions about his general work environment before termination, Defendants are not quoted in the article and declined to comment (Dkt. 27-4 at 1); The final article discusses McClure's termination, but does not contain any comments or quotes from the Defendants, with the exception of Hubert declining to comment for the story. (Dkt. 27-4 at 3.)

**REPORT, RECOMMENDATION, AND ORDER - 48**

Risk Management Program in an effort to avoid any conflict of interest on Commissioner McConnell's behalf. *Id.* Suzanne was the Planning and Zoning Administrator prior to McClure's appointment, and the "logical person" person to take over the temporary role. *Id.* at p. 105, ll. 18-21. (Dkt. 30-2 at 4.)

The Court agrees with Defendants' argument that the news articles alone do not demonstrate evil intent or oppressiveness by McConnell or Hubert, a required element of the alleged first amendment violation under Section 1983.  Nonetheless, the Court finds McClure has offered a sufficient threshold of evidence of oppressive behavior, and will permit him leave to amend to include claims punitive damages with respect to these claims.

The Court ruled above it will not strike the statements in the Hiatt Affidavit; if the alleged conduct of the Board is proven as stated in the Hiatt Affidavit,   McClure has demonstrated that the Board of Commissioners intended to reprimand McClure for speaking to the media and the two individually named Commissioners (McConnell and Hubert, whom allegedly had conflicts of interest) may have terminated his employment for the same reason. While Defendants offer evidence to rebut McConnell and Hubert's state of mind, it is for the jury, not the judge, to decide the credibility of the witnesses' testimony and other evidence.

Because McClure's argument for punitive damages is based upon an alleged act of oppression and the Court finds McClure has proferred a sufficient threshold of evidence for punitive damages, the Court will recommend McClure's motion to add a claim for punitive damages to his claims against McConnell and Hubert be granted.

**REPORT, RECOMMENDATION, AND ORDER - 49**

**2. Punitive Damages on Idaho State Law Claims**

**A. Idaho Standard for Punitive Damages**

Idaho Code § 6–1604 directs the court to grant a motion to amend to seek punitive damages if, "after weighing the evidence presented, the court concludes that, the moving party has established ... a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." Idaho Code § 6–1604. An award of punitive damages is permissible only where the claimant proves, "by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." *Id.*

As a matter of substantive law, it is well established in Idaho that punitive damages are not favored and should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits. *Manning v. Twin Falls Clinic & Hosp., Inc.,* 122 Idaho 47, 830 P.2d 1185, 1190 (Idaho 1992) (citing *Jones v. Panhandle Distributors, Inc.,* 117 Idaho 750, 792 P.2d 315 (Idaho 1990); *Soria v. Sierra Pac. Airlines, Inc.,* 111 Idaho 594, 726 P.2d 706 (Idaho 1986); *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 665 P.2d 661 (Idaho 1983); *Linscott v. Rainier National Life Ins. Co.,* 100 Idaho 854, 606 P.2d 958 (Idaho 1980); *Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980)); *see also O'Neil v. Vasseur,* 118 Idaho 257, 796 P.2d 134, 142 (Idaho Ct.App.1990). Punitive damages may be recovered in a contract action. *Cuddy Mtn. Concrete, Inc. v. Citadel Construction, Inc.,* 121 Idaho 220, 824 P.2d 151, 158 (Idaho Ct.App.1992). However, breach of the underlying contract

by itself is not sufficient to warrant an award of punitive damages. *General Auto Parts Co., Inc. v. Genuine Parts Co.,* 132 Idaho 849, 979 P.2d 1207, 1211 (Idaho 1999).

An award of punitive damages will be allowed only when the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Manning,* 830 P.2d at 1190 (quoting *Cheney,* 665 P.2d at 669). Further, the Supreme Court of Idaho has clearly defined the parameters of such an award, and has stated that "to support an award of punitive damages, [plaintiff] must prove [defendant's] actions toward [plaintiff] constituted an extreme deviation from standards of reasonable conduct, which was done with knowledge of the likely consequences and an extremely harmful state of mind." *Seiniger Law Office, P.A. v. North Pacific Ins. Co.,* 145 Idaho 241, 178 P.3d 606, 615 (Idaho 2008).

In other words, "[t]he issue revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC.,* 146 Idaho 118, 191 P.3d 196, 201 (Idaho 2008) (citing *Myers v. Workmen's Auto. Ins. Co.,* 140 Idaho 495, 95 P.3d 977, 985 (Idaho 2004)). An award of punitive damages "serves the dual function of deterrence and expressing society's outrage." *Todd,* 191 P.3d at 201 (quoting *Curtis v. Firth,* 123 Idaho 598, 850 P.2d 749, 760 (Idaho 1993)). In a contract action, an award of punitive damages generally is based on conduct which is unreasonable and irrational in the business context, and demonstrates a lack of professional regard for the consequences of the breach of the contractual agreement. *Cuddy Mtn. Concrete, Inc.,* 824 P.2d at 160.

**REPORT, RECOMMENDATION, AND ORDER - 51**

When the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, a motion to amend to assert punitive damages will not be allowed. *See Strong,* 393 F.Supp.2d at 1026 (finding plaintiff had not established reasonable likelihood of proving by a preponderance of evidence[25]"the requisite 'extremely harmful state of mind' and 'extreme deviation from reasonable standards' " because of conflicting evidence) (citing *Kuntz v. Lamar Corp.,* 385 F.3d 1177, 1187 (9th Cir.2004)).

The Idaho appellate courts have also made clear that, with respect to punitive damages claims, the decision whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court. *Manning v. Twin Falls Clinic & Hosp.,* 122 Idaho 47, 830 P.2d 1185, 1190 (Idaho 1992) (additional citations omitted). In this respect, the federal courts are in accord with Idaho state substantive and procedural law. *Foman v. Davis,* 371 U.S. 178, 182, (1962).

Fed.R.Civ.P. 15(a) encourages the liberal granting of motions to amend pleadings. However, whether to amend the pleadings to assert a claim for punitive damages is another matter, requiring a different standard as is consistently reflected in the significant

---

[25] *Strong* involved Idaho Code § 6–1604's "preponderance of the evidence" standard before its amendment in 2003. Section 6–1604 now places a higher burden on the moving party, *i.e.,* a requirement for "clear and convincing evidence." *See also* Black's Law Dictionary 596 (8th ed.2004) ("clear and convincing evidence .... This is a greater burden than preponderance of the evidence ...."). Thus, the *Strong* standard remains applicable. That is, if the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, the moving party has not met its burden under the substantial evidence standard, compelling the same conclusion under an even higher burden of clear and convincing evidence.

**REPORT, RECOMMENDATION, AND ORDER - 52**

case law in this jurisdiction. *Todd,* 191 P.3d at 201; *Hall v. Farmers Alliance Mut. Ins. Co.,* 145 Idaho 313, 179 P.3d 276, 282–283 (Idaho 2008); *Vendelin v. Costco Wholesale Corp.,* 140 Idaho 416, 95 P.3d 34, 41–42 (Idaho 2004); *Vaught v. Dairyland Ins. Co.,* 131 Idaho 357, 956 P.2d 674, 679–680 (Idaho 1998); *see also O'Neil v. Vasseur,* 118 Idaho 257, 796 P.2d 134, 142 (Idaho Ct.App.1990) (stating that "[p]unitive damages are not favored in the law and should only be awarded in the most unusual and compelling circumstances.").

As the case law reflects, McClure should be allowed to amend the pleadings to assert a prayer for punitive damages only if, after weighing the evidence presented, the Court concludes that McClure has established a reasonable likelihood of proving, by clear and convincing evidence, that Defendants' conduct in terminating his employment was oppressive, fraudulent, malicious, or outrageous. *See Vendelin,* 95 P.3d at 41. "Clear and convincing evidence is generally understood to be [e]vidence indicating that the thing to be proved is highly probable or reasonably certain. *"State v. Kimball,* 145 Idaho 542, 181 P.3d 468, 472 (Idaho 2008) (internal quotations omitted).

### B. Punitive Damages against Lincoln County

McClure seeks to include punitive damages on his breach of contract and wrongful termination in contravention of public policy claims against Lincoln County.[26] McClure relies on essentially the same facts and evidence as alleged above in connection with his

---

[26] If the Court adopts this recommendation, McClure's wrongful termination in contravention of public policy claim will be the only remaining state claim for which McClure seeks punitive damages. Nonetheless, the same standard as for the other state law claims applies—the Court concludes McClure has not met the standard for allowing amendment to add a claim for punitive damages.

**REPORT, RECOMMENDATION, AND ORDER - 53**

Section 1983 claims to demonstrate punitive damages should be included in his state law claims against Lincoln County.  However, the Court finds McClure has failed to demonstrate, by clear and convincing evidence, that the Board of Commissioner's decision to terminate his employment constituted an extreme deviation from the standard of reasonable conduct, and that it was done with an extremely harmful state of mind.

In McClure's briefs and during the hearing before this Court, McClure did not fully articulate the correct standard for allowing punitive damages to go to the jury on Idaho state law claims. McClure focused solely on the intent requirements and argued he met the standards under both Section 1983 and Idaho law. However, McClure disregarded the evidentiary standard necessary to prove intent pursuant to Idaho law, which requires a showing "by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Idaho Code § 6–1604.

Defendants argued that the materials presented by McClure in support of his motion for leave to amend does not prove by clear and convincing evidence that Lincoln County acted with oppressive, fraudulent, malicious or outrageous conduct against McClure. Defendants argued further that the inclusion of punitive damages, at this point in the litigation, is premature, and would be willing to revisit the issue later when the record is more developed.  The Court agrees with Defendants. McClure's newspaper articles and the Hiatt Affidavit submitted in support of his motion do not meet the clear and convincing standard that Lincoln County acted with oppressive, fraudulent, malicious or outrageous conduct against McClure. Accordingly, the Court will recommend

**REPORT, RECOMMENDATION, AND ORDER - 54**

McClure's Motion to Amend to Include Punitive Damages with respect to his Idaho state law claims be denied.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

Motion for Reconsideration (Dkt. 10) is **DENIED.**

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Motion to Partially Dismiss (Dkt.10) be **GRANTED** in part and **DENIED** in part consistent with the Court's analysis above; and

2) Motion for Leave to Amend to Include Claims for Punitive Damages (Dkt. 27) be granted regarding the federal claims and denied, without prejudice, for the Idaho state claims.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **February 22, 2016**

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT, RECOMMENDATION, AND ORDER - 55**